IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

SCOTT K. S., )
)
      **Plaintiff,** )
)
vs. ) Case No. 20-CV-203-JFJ
)
KILOLO KIJAKAZI, )
Acting Commissioner of Social Security,[1] )
)
      **Defendant.** )

**OPINION AND ORDER**

Plaintiff Scott K. S. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i) and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.      General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps

that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Procedural History and the ALJ's Decision

On November 13, 2017, Plaintiff, then a 50-year-old male, applied for supplemental security income benefits under Title XVI of the Social Security Act. R. 15, 164-69. Plaintiff alleges that he has been unable to work since August 15, 2013, due to problems with his upper and lower back, diabetes with neuropathy, rheumatoid arthritis, diverticulitis, problems with his shoulder and neck, problems with his right knee, insomnia, osteoarthritis, hernias, depression, and migraines. R. 164, 179. Plaintiff's claim for benefits was denied initially and on reconsideration. R. 50-85. ALJ Lantz McClain conducted an administrative hearing and issued a decision on August 27, 2019, denying benefits and finding Plaintiff not disabled. R. 15-27, 33-49. The

Appeals Council denied review, and the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. R. 1-3; 20 C.F.R. §§ 404.981, 416.1481.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his application date of November 13, 2017. R. 17. At step two, the ALJ found Plaintiff's diabetes mellitus, hypertension, degenerative disc disease, osteoarthritis, osteoporosis, obesity, depression, and anxiety were severe impairments, and his diverticulitis, hernias, and migraines were nonsevere impairments. R. 17-18. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 18-20.

At step four, the ALJ summarized Plaintiff's hearing testimony, the medical source opinion evidence, and the medical evidence in the record. R. 20-25. He then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with frequent climbing ramps or stairs, balancing, and stooping, and occasional kneeling, crouching, and crawling. R. 20. The ALJ further found Plaintiff could perform simple and repetitive tasks, and could occasionally interact with supervisors, coworkers, or the general public. *Id*. Based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could not return to his past relevant work. R. 25-26.

At step five, the ALJ concluded that Plaintiff could perform other occupations existing in significant numbers in the national economy, including marker and routing clerk. R. 26-27. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 27. Accordingly, the ALJ concluded Plaintiff was not disabled. *Id*.

**III.    Issues**

In challenging the Commissioner's denial of benefits, Plaintiff asserts the ALJ erred by failing to properly evaluate his subjective complaints of difficulty with manipulative activities

4

pursuant to Social Security Ruling ("SSR") 16-3p.  ECF No. 20.

## IV. Analysis

Plaintiff specifically contends that the ALJ erred in analyzing his subjective statements by: (1) failing to explain why Plaintiff's alleged manipulative limitations were not included in the RFC assessment, (2) improperly relying on Plaintiff's own reports of improved pain, and (3) improperly relying on normal examination findings.

In evaluating a claimant's subjective statements, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.  SSR 16-3p, 2016 WL 1119029, at *7.  If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.*  Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[2]

---

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis.  *See* SSR 16-3p (superseding SSR 96-7p).  In practice, there is little substantive difference between a "consistency" and "credibility" analysis.  *See Brownrigg v. Berryhill*, 688 F. Appx. 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit).  Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (cleaned up). The ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id*. However, so long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (cleaned up). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id*.

The Court finds no error in the ALJ's consistency analysis. As relevant here, the ALJ acknowledged Plaintiff's testimony that he "has trouble holding onto objects and drops them regularly" and could "[f]or the most part . . . use his hands for buttons and zippers." R. 21. The ALJ then found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id*. In reaching this conclusion, the ALJ discussed several inconsistencies between Plaintiff's subjective complaints and the evidence of record, including: (1) the improvement of his symptoms with medication; (2) Dr. Cherri Whang's December 2017 physical examination showing Plaintiff could move all extremities equally and strong, had no deformities, and had no red, hot, or swollen joints; (3) Dr. Robert Stone's December 2017 physical examination showing normal musculoskeletal range of motion and strength; (4) Dr. Frank Frederick's March 2018 physical examination showing no musculoskeletal tenderness or swelling, normal sensation, and normal motor function; (5) Dr. Melita Tate's December 2018 physical examination showing grossly normal muscle strength and tone, full range of motion in Plaintiff's extremities, no red or hot joints, and no deformity; and (6) Dr. Tate's May 2019 physical examination showing grossly normal muscle strength and tone, full range of motion in Plaintiff's extremities, no red or hot joints,

6

and no deformity. R. 21-23, 25. Thus, contrary to Plaintiff's assertion, the ALJ linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Cowan* and SSR 16-3p.

To the extent Plaintiff alleges the ALJ did not properly consider Dr. Tate's medical source statements in the consistency analysis, the Court disagrees.[3] Although Plaintiff's primary complaint at the December 2017 emergent care visit with Dr. Stone was unrelated to his musculoskeletal impairments, Dr. Stone performed a physical examination. R. 339. The ALJ accurately characterized the results of this examination in finding Dr. Tate's physical limitations unsupported by the objective medical evidence. R. 21-22, 25. Additionally, the ALJ more generally found "[t]he objective medical evidence does not support the physical limitations found by Dr. Tate." R. 25. Elsewhere in the opinion, the ALJ thoroughly summarized the relevant objective medical evidence, and the ALJ's failure to specifically address this evidence again in his discussion of Dr. Tate's physical limitations does not render his analysis deficient. *See Endriss v. Astrue,* 506 F. Appx. 772, 777 (10th Cir. 2012) (affirming the ALJ's rejection of a treating physician's opinion where the ALJ "set forth a summary of the relevant objective medical evidence earlier in his decision," and the ALJ "was not required to continue to recite the same evidence again in rejecting [the] opinion."). Moreover, Plaintiff does not point to any other evidence apart from his own assertions to support the manipulative limitations he claims, and the ALJ is not required to include limitations in the RFC assessment that are not supported by the medical evidence. *See Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000) (holding the ALJ did not err

---

[3] Plaintiff frames his alleged errors related to Dr. Tate's medical source statements in terms of the ALJ's consistency analysis. Plaintiff does not develop any argument regarding the ALJ's analysis of the persuasiveness of Dr. Tate's medical source statements and any such argument is waived. *See Bronson v. Swensen,* 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."). Accordingly, the Court's analysis is limited to the ALJ's consideration of Dr. Tate's medical source statements in the consistency analysis.

by excluding Plaintiff's inability to perform repetitive hand motions from the RFC assessment where the medical record contained no evidence of such limitation).

Plaintiff next asserts that the ALJ improperly relied on Plaintiff's own reports of improved pain with medication to discount his symptoms. Specifically, he argues the ALJ mischaracterized his statements because Plaintiff reported that his medications helped "some" and reduced his pain from 10 on a 10-point scale to between 4 and 5, rather than fully resolved his pain. As an initial matter, the ALJ did not discount all of Plaintiff's symptoms. Instead, the ALJ agreed that Plaintiff would "undoubtedly have some difficulties"; he considered Plaintiff's symptoms as part of the RFC assessment; he adopted the state agency physicians' opinions (which also considered Plaintiff's symptoms); and he specifically found Plaintiff could function within the RFC limitations without experiencing significant exacerbation of his symptoms. Thus, the ALJ determined that Plaintiff experienced chronic, but not disabling, pain and he accounted for it in determining the RFC. *See Thompson v. Sullivan,* 987 F.2d 1482, 1490-91 (10th Cir. 1993) (requiring consideration of nondisabling pain in the RFC determination).

Further, substantial evidence supports the ALJ's conclusion that medication improved Plaintiff's symptoms. Plaintiff reported a 50% improvement in his pain with medications in December 2017 and "some" improvement in December 2018. R. 304, 476. Dr. Tate suggested reducing Plaintiff's pain medication dosage by 10% beginning in January 2019, and Dr. Tate's May 2019 physical examination of Plaintiff was normal. R. 474-76. Moreover, the inability to work without some pain or discomfort does not establish disability. *See Brown v. Bowen,* 801 F.2d 361, 362-63 (10th Cir. 1986) ("[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.").

8

Lastly, Plaintiff asserts that the ALJ improperly relied on normal physical examination findings to discount his subjective symptoms. Specifically, Plaintiff points to Dr. Tate's May 2018 physical examination that showed tenderness and spasm in his neck and trapezius with decreased range of motion in all planes extending into his thoracic and lumbar regions, as well as bilateral hand x-rays taken in May 2016 which revealed mild degenerative changes in his fingers. Plaintiff asserts it was error for the ALJ to rely on normal examinations in discounting his symptoms, considering this contrary evidence. However, the ALJ specifically discussed Dr. Tate's May 2018 physical examination in his decision, and he relied, in part, on Dr. Tate's subsequent examinations to discount Plaintiff's symptoms. R. 22, 24-25. Moreover, Plaintiff fails to explain how Dr. Tate's physical findings regarding his neck and back support the manipulative limitations he claims.

Similarly, Plaintiff points out that the ALJ did not discuss May 2016 hand x-rays that revealed mild osteoarthritic degenerative changes in his fingers. However, Plaintiff again fails to explain why the ALJ's failure to discuss this evidence is reversible error. As set forth above, the ALJ identified osteoarthritis as a severe impairment at step two and thoroughly discussed Plaintiff's testimony and the findings of his treating, consultative, and reviewing physicians as part of the RFC analysis. R. 17, 20-25. Furthermore, the record indicates the ALJ considered the May 2016 hand x-rays. The ALJ cited to Exhibit B3F, where the hand x-rays are located in the record, and further stated that he considered the entire record in determining the RFC. R. 20, 25. This is sufficient. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Accordingly, any error the ALJ made with respect to Plaintiff's hand x-rays is considered harmless. *See Keyes-Zachary,* 695 F.3d at 1166 ("Where . . . we can follow the adjudicator's reasoning . . . and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.").

9

**V.      Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 18th day of October, 2021.

                                                                        _____
                                                                        **JODI F. JAYNE, MAGISTRATE JUDGE**
                                                                        **UNITED STATES DISTRICT COURT**